EMMA W. COOK et al., executors, &c.,

*v.*

WILLIAM W. WEIGLEY et al.

[Decided November 24th, 1906.]

The agreement of 1833, between the commissioners representing the States of New Jersey and New York, fixing the boundaries between such states, article 2, provides that the State of New York shall retain its present jurisdiction of and over the islands lying in the waters of the bay of New York.—*Held*, that such agreement did not deprive the State of New Jersey of that element of state sovereignty which permits the determination of the status and ownership of lands within the state limits, and hence the court of chancery has jurisdiction to enforce its decree of foreclosure of mortgage and sale of islands in the harbor of New York, but within the New Jersey boundary.

On demurrer to bill of review.

*Messrs. Vroom, Dickinson & Scammell,* for the complainants.

*Mr. Frank Durand,* for the demurrants.

BERGEN, V. C.

The decree which it is now sought to review and annul was made in the above-entitled cause adjudging the foreclosure of the equity of redemption in, and directing the sale of, certain lands for the purpose of paying a debt, to secure which the premises in dispute were mortgaged. The lands lie within the boundaries of the State of New Jersey, but within the harbor of the State of New York, and are islands surrounded by the waters of the Hudson river and the bay of New York, shortly described as "Robbins Reef" and "Oyster Island." The charge in the bill of review is that since the decree complained of was made, William W. Weigley, one of the defendants in the foreclosure suit, has discovered that under the terms of the compact or treaty made between the States of New York and New Jersey

in 1833, which was afterwards ratified and confirmed by the legislature of each state, and approved by the congress of the United States, it was agreed that the State of New York should retain its exclusive jurisdiction of and over Robbins Reef and Oyster Island, and that by virtue of such treaty this court had no jurisdiction over the subject-matter, and is without authority to enforce its decree of foreclosure and sale, and for that reason he is entitled to have the decree reversed and made void. To this bill a demurrer has been interposed, and as the principal issue relates to the construction of article 2 as expressed in said treaty in the following words:

"The State of New York shall retain its present jurisdiction of and over Bedlow's and Ellis' Islands, and shall also retain exclusive jurisdiction of and over the other islands lying in the waters above mentioned and now under the jurisdiction of that state,"

I shall not consider the other questions raised by counsel on the argument, because the conclusion to which I have arrived on the main point will dispose of the whole question. The situation presented is this: Weigley, as the owner of Robbins Reef and Oyster Island, mortgaged them to the complainant. These islands lie within the territorial limits of New Jersey, and the right to enforce the payment, at maturity, of the mortgage in the courts of this state is questioned, because by the terms of the treaty exclusive jurisdiction was retained by New York over certain islands, among which are those in question. The only foundation for this bill of review is the claim that the retention of exclusive jurisdiction, as expressed in said treaty, deprives the State of New Jersey of that element of state sovereignty which permits the determination of the status and ownership of lands within the limits of such state.

Unless I misinterpret the opinion of Mr. Justice Garrison in *Central Railroad Co.* v. *Jersey City, 71 N. J. Law (41 Vr.) 81,* it effectively disposes of the question here raised in favor of the demurrant. In this opinion the learned jurist distinguishes with clearness and accuracy the distinctive meaning to be accorded to "exclusive jurisdiction" and "sovereignty," respectively, in construing the treaty between the states. On this subject he said: "This expectation is fully justified by the

terms of the compact. Article 1, in clear and explicit language, fixed the boundary line between the states as the middle of the Hudson river and the bay of New York. This disposed of the question of territorial limits, and had this been the only matter submitted to the commissioners would have exhausted their authority in the premises. They were, however, empowered to deal also with jurisdiction. Hence the qualification with which article 1 concluded—'except as hereinafter otherwise particularly mentioned.' To fulfill the conditions of this clause, the matters to be particularly mentioned must be 'otherwise'—that is, must alter or modify what has gone before, and secondly, must be capable of exception—that is, of subtraction from it, hence must be less than what had preceded. Articles 2 and 3 fulfill with precision each of these conditions, and from their position and context admit of no other rational interpretation than that they are the excepted matters to be particularly mentioned, by which the otherwise unqualified concession of territorial limits was to be modified and abridged. This was affected in article 2 by providing that New York should retain its jurisdiction over certain islands lying in the waters mentioned in article 1, while article 3 continued the subtracting process by stipulating that New York should enjoy exclusive jurisdiction over all the waters included in the territorial limits of New Jersey up to low-water mark on the New Jersey shore." It is difficult to conceive why, if the ceding of exclusive jurisdiction over waters included within the territorial limits ceded confers only an extraterritorial jurisdiction, and does not destroy such governmental powers as sovereignty implies, why the retention of exclusive jurisdiction over a part of the land declared to be within the limits of the State of New Jersey should have any greater force. By article 2 of the treaty the lands in question are declared to be within the boundary of the State of New Jersey, and subject to the sovereignty of that state, encumbered, however, with the right of New York to exercise jurisdiction over it. This, in my opinion, does not change the territorial location of the land, for the reservation of jurisdiction thereover did not have the effect of retaining the land as a part of the territory of the State of New York, and the jurisdiction which the State of New York

retained, and may exercise, is no greater than the "exclusive jurisdiction" granted to New York over all the waters of the bay of New York, and does not have the effect, here contended for, of depriving this court of the jurisdiction necessary to determine the legal status of these islands to the same extent that it may do with regard to all other lands within its boundaries.

In the extremely able and interesting opinion read by Mr. Justice Garrison in *Central Railroad Co.* v. *Jersey City, supra,* he sums up the conclusions reached by the courts of New York on this question in the following words: "Indubitably, therefore, the State of New York, through its highest judicial tribunal, has expressly disowned any interpretation of the compact in question by which the sovereignty of New Jersey over the territorial limits granted by the compact of 1833 is to be in anywise impugned."

The conclusion which I have reached is that the demurrer should be sustained, with costs.